IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RUTH OQUENDO ZACARIAS,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

CIVIL NO. 10-1457 (ADC/CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Ruth Oquendo Zacarias (hereafter plaintiff "Oquendo") filed this action to obtain judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying the application for entitlement to a determination of disability and ensuing benefits. Plaintiff Oquendo requested in the Complaint for Relief the Commissioner's determination be set aside upon there being no substantial medical or vocational evidence in the record to support the administrative determination that plaintiff Oquendo was not disabled within the meaning of the relevant statutory and regulatory provisions. Thus, plaintiff requests the administrative decision which denied disability be reversed and benefits be awarded or that the case be remanded for re-hearing, taking of additional evidence or further proceedings.[1] (Docket No. 1).

On November 16, 2010, the Commissioner answered the Complaint and filed copy of the administrative record. (Docket Nos. 10 and 11). On December 7, 2010, plaintiff

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

Oquendo, through her legal representative Atty. Louis A. De Mier-Le Blanc, filed a memorandum of law. On February 24, 2011, defendant filed its memorandum, after requests for extension of time were granted. (Docket Nos. 12 and 17). These motions were referred to this Magistrate Judge upon plaintiff's consent to proceed before a Magistrate Judge for all further proceedings. (Docket Nos. 4, 5 and 6).

We now discuss the pending motions towards the proper disposition of this action.

**ADMINISTRATIVE AND PROCEDURAL HISTORY AND RECORD**

Plaintiff Oquendo filed an application for a period of disability and disability benefits on March 24, 2005, claiming inability to work since January 6, 2003, due to high blood pressure, pinched nerves, carpal tunnel syndrome, neuropathy, a cervical condition and venous insufficiency. After the application was initially denied, plaintiff requested an administrative hearing. Plaintiff Oquendo declined to testify at the administrative hearing, requesting instead the administrative decision be made on the record.

Thereafter, the administrative law judge Hon. Gilbert Rodríguez (hereafter "ALJ") issued a decision finding plaintiff Oquendo was not under disability. The Appeals Council denied the request for review, for which said final decision is now pending judicial determination.

Plaintiff Oquendo has claimed inability to work since January 6, 2003, and to perform her previous job as a secretary, being fifty two (52) years old since date she was last insured. Upon plaintiff's waiver to appear at the administrative hearing, the presiding ALJ determined, following the sequential evaluation process and considering the medical

evidence on record, that plaintiff Oquendo last met the insured status requirements on December 31, 2004.

The ALJ found plaintiff Oquendo had not engaged in substantial gainful activity since the alleged date of disability of January 6, 2003. The ALJ also found plaintiff suffered from severe impairments to include: osteoarthritis of the cervical/lumbar spine, degenerative disc disease of the lumbar spine at T11, T12 and T-12-L1, degenerative joint disease of the lumbar spine with lumbar disc bulging L4-L5 and L5-S1, left L4 chronic radiculopathy, bilateral carpal tunnel syndrome status post median nerve release of the left hand (surgery performed on October 1, 2003) and status post median nerve release with flexor synovectomy of the right hand (surgery performed on April 28, 2004), osteoarthritis of the right knee, status post medial meniscus tear of the left knee requiring arthroscopic surgery with partial medical menisectomy, hypertension, diabetes mellitus (non-insulin dependent) and diabetic neuropathy. (*Transcript, p. 12*).

The ALJ considered the above impairments to be severe because these limited plaintiff's residual functional capacity. Still, the impairments or combination thereof did not meet the requirements of the Listing of Impairments. (*Id. p. 13*).

Thereafter, the ALJ issued an opinion dated March 19, 2008, determining plaintiff Oquendo was not under disability. The ALJ concluded plaintiff retained the residual functional capacity to perform her past relevant work as a secretary which was well within her residual functional capacity for medium type of work, that is, to lift and/or carry fifty (50) pounds occasionally and twenty five (25) pounds frequently, sit and/or walk for about

six hours in an eight hour workday and no limitations in pushing and/or pulling, operating hand and/or foot controls and no visual, communicative or environmental limitations.

The ALJ's decision, affirmed by the Appeals Council, discussed the impairments as sustained by the medical evidence on record. At times, the medical evidence was found to reveal positive straight leg raising tests, tenderness and sensory disturbances affecting the hand and lower extremities, along with muscle spasms of the cervical and lumbar regions. On other occasions, laboratory studies and electromyograms of the lower extremities showed no evidence of polyneuropathy, negative straight leg raising tests, equal and preserved deep tendon reflexes, normal gait and no muscle atrophy. (*Id. p. 13*). Thus, the ALJ found conflictive medical evidence regarding plaintiff Oquendo's impairments and their impact as to her functioning.

The opinion of the ALJ indicated plaintiff had responded favorably to treatment and surgery and, upon considering the claim longitudinally, concluded the impairments were not capable of producing the intensity and degree of the subjective pain alleged. Furthermore, plaintiff retained a good range of motion, her daily activities were not restricted, and there was no neurological compromise. (*Id. p. 16*).

In the presence of conflicting medical evidence about plaintiff's conditions, the ALJ evaluated credibility and evidence that could objectively support the findings, and based on the rest of the record longitudinally, determined plaintiff Oquendo was able to perform within the range of medium level of exertion and without significant non-exertional impairments, for which she was found able to carry out her past relevant work as secretary.

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as plaintiff Oquendo: (1) meets the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through December 31, 2004; (2) has not engaged in substantial gainful activity since the alleged onset date of disability of January 6, 2003; (3) allegations of severe impairments or combination thereof had more than a minimal affect on her ability to perform basic work-related activities, constituting severe impairments; (4) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record plaintiff Oquendo had the residual functional capacity to lift a maximum of fifty (50) pounds with frequent lifting/carrying up to twenty-five (25) pounds, which did not preclude carrying out medium exertion type of work. Considering plaintiff's residual functional capacities for medium type of work and non-significant non-exertional limitations, the ALJ concluded she could still perform her previous kind of work as secretary and thus, she was not under disability. (*Id. pp.12-18*).

The ALJ also considered plaintiff's allegations of pain as substantiated by the medical evidence. The ALJ further concluded, based on the factors enumerated by him as to how it affected plaintiff's daily activities, the medication and/or treatment prescribed for the alleged pain, statements about pain or other symptoms from the medical record, that these alone did not establish disability. Plaintiff Oquendo had waived her presence at the administrative hearing and did not allow the ALJ to consider her testimony or observe her demeanor on the issues raised. However, evaluating her medical history and treatment, the

ALJ assessed how her allegations of non-exertional limitations, as imposed by her claims as to pain, were corroborated by objective medical findings, medications prescribed and medical examinations. This evidence was also evaluated in conjunction with other evidence, including Ms. Oquendo's ability to perform daily activities and her general functioning, which were not precluded by her conditions.

## LEGAL ANALYSIS

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *See* Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering

age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines

whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case examined and analyzed plaintiff's case following the steps above described up to step four.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, the ALJ found plaintiff Oquendo was able to perform her previous past relevant work and, thus, only up to step four consideration is required.

Counsel for plaintiff Oquendo claims the record is devoid of a residual functional capacity completed by a treating or examining physician or source that could support the Commissioner's lay opinion on the issue. (*Plaintiff's memorandum, p. 3*). A consultant from the Social Security Administration had indicated, after an exam, that the patient was limited to carry, lift and handle moderate weight objects due to cervical and LSS OA (*Tr. p. 157*). A second consultant stated plaintiff Oquendo was to avoid repetitive motion work with hands on a sustained manner. (*Id. p. 170*).

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Succinctly, the medical evidence in the record shows that by the year 2005, upon complaints of low back pain, a neurologic evaluation of Dr. Héctor J. Cases-Mayoral described a well-developed, well-nourished individual, in no acute distress. There was good tone and strength in trapezius and sternocleidomastoid muscles. The motor system had no involuntary movements. The extremities showed no atrophy or fasciculation. The neck had no tenderness or deformities and there was mild cervical muscle spasm with decrease range of movement. The back showed no tenderness or deformities. There was moderate paravertebral lumbosacral muscle spasm, with positive straight leg raising bilaterally at 30 degrees. The diagnostic impression was of chronic cervical strain; chronic lumbosacral strain with disc bulges and likely peripheral polyneuropathy. The recommendation was to avoid repetitive motion work or strenuous activities. (*Id. p. 112*).

By March 2006, neurological studies of plaintiff Oquendo showed chronic radiculopathy at left L4. (*Id. p. 106*). Similarly by September 2006, the MRI confirmed

spondylotic changes at T11-12 and T12-L1 without associated with mild degenerative disc disease. (*Id. p. 140*). However, one must consider that plaintiff Oquendo's insured period had expired back in 2004.

During the ensured period, there is medical evidence dated June 13, 2003, of a lumbar spine CT finding bulging disc at L4-5 encroaching upon the right neural foramina. There was bulging disc at L5-S1 mildly compressing the thecal sac. (*Id. p. 116*). Before plaintiff's insured status had expired on December 31, 2004, she had submitted a summary as to her daily activities, including; having breakfast, reading the Bible, doing the dishes, watching television, doing laundry, cooking and doing house chores in general. (*Id. pp. 71, 73*). Plaintiff Oquendo had also indicated she went shopping, mostly for groceries, and could pay and manage her accounts and money. (*Id. p. 74*). She would attend Church services and read, receive visits from family and friends; she also drove and had no need to be accompanied. (*Id. p. 75*).

Contrary to counsel for plaintiff's arguments, the record shows residual functional capacity assessments which indicate the patient could lift and/or carry up to fifty (50) pounds occasionally and twenty five (25) pounds frequently; could stand and/or walk up to six (6) hours in an 8 (8) hour workday; sit for six (6) hours and push and/or pull unlimited, that served as basis for the ALJ's determination regarding the residual functional capacity for medium type of work exertion. (*Tr. pp. 146, 191-197*).

Dr. Ana Martínez-Pazola, rheumatologist, rendered a report dated August 30, 2004. There were complaints of joint pains, but no edema or deformities. There were no gait disturbances, tremors, loss of consciousness, or involuntary movement nor dizziness. (*Tr.*

*p. 154*). The back had lumbosacral paraspinal tenderness with decreased range of motion. There was normal gait and posture; the motor and sensory had no gross deficit. (*Tr. p. 155*). The patient retained the ability to walk on heels and toes; had normal upper and lower extremities motor strength and no flaccidity. The diagnostic impression was of cervical and lumbosacral osteoarthritis, cervical and lumbosacral muscle spasm, discal disease at C6-C7, right knee osteoarthritis, arterial hypertension, non-insulin dependent diabetes mellitus and bilateral carpal tunnel syndrome (by history).[2] (*Tr. p. 156*).

By May of 2004, the straightening of the cervical spine was related to muscular spasm and a CT was recommended. (*Tr. p. 205*). By August of 2004, the X-rays of the lumbosacral spine showed small osteophytes, well-preserved intervertebral disk spaces. Straightening was compatible with muscle spasm. (*Tr. p. 162*).

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987). To review

---

[2] Dr. Martínez-Pazola's report dated December 12, 2003 is consonant with the one issued in 2004, except for the presence of bilateral carpal tunnel syndrome as to which the patient underwent treatment and surgical intervention by April 2004 and May of 2004 at the Pavía Hospital. (*Tr. pp. 177-180, 212-214, 220-227*).

the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[3] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Finally, we give deference to the ALJ's interpretation of the medical record and we note that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence in the record.

---

[3] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

## CONCLUSION

For the reasons above discussed, having perused the record and considered there is substantial evidence in support of the decision rendered by the Commissioner, the Commissioner's decision is AFFIRMED.

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 31th day of March of 2011.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE